UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON ANTHONY GOTTERSON,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>    Defendant. | Case No. 1:22-cv-01383-KJM-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENY DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMAND CASE TO THE COMMISSIONER OF SOCIAL SECURITY[2]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. Nos. 14, 17) |

    Brandon Anthony Gotterson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 14, 17-18). For the reasons stated, the undersigned RECOMMENDS granting Plaintiff's motion for summary judgment, denying the Commissioner's cross-motion for

---

[1] The Court has substituted Martin O'Malley, who has been appointed the Acting Commissioner of Social Security, as the defendant in this suit. *See* Fed. R. Civ. P. 25(d).

[2] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

summary judgment, and remanding for further administrative proceedings.

## I. JURISDICTION

Plaintiff filed for supplemental security income on May 6, 2019, alleging a disability onset date of December 26, 1999. (AR 165-73). At the hearing, Plaintiff amended the alleged onset date to May 6, 2019. (AR 38). Benefits were denied initially (AR 50-62, 77-80) and upon reconsideration (AR 63-76, 86-91). A telephonic hearing was conducted before an Administrative Law Judge ("ALJ") on August 19, 2021. (AR 35-49). Plaintiff was represented by counsel and testified at the hearing. (*Id.*). On September 15, 2021, the ALJ issued an unfavorable decision (AR 16-34), and on July 5, 2022, the Appeals Council denied review. (AR 5-10). The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 37 years old at the time of the hearing. (AR 38). He completed high school and attended special education classes. (*See* AR 187). He lives with his dad and niece. (AR 40). Plaintiff has no past relevant work. (AR 39). Plaintiff bases his application for benefits on symptoms from bipolar disorder, anxiety, and depression, and gastro-esophageal reflux disease (GERD). (AR 39). Plaintiff testified that he has seen his treating psychologist, Dr. Sheldon, every few months since early 2015. (AR 39-40). He testified that he worries about his family, his dad helped him fill out his disability paperwork, he seldom gets angry, he does not have issues with focus, he does not have many friends, and he doesn't leave the house much. (AR 41-44). Plaintiff testified that if he had to work in public it would make him nervous and cause him stress. (AR 43-44).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the

1 claimant is not disabled. 20 C.F.R. § 416.920(b).

2 If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must

find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 6, 2019, the application date. (AR 21). At step two, the ALJ found that Plaintiff has the following severe impairments: bipolar disorder, depression, OCD (obsessive compulsive disorder), and generalized anxiety disorder. (AR 21). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 22). The ALJ then found that Plaintiff has the RFC:

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: he can perform simple, routine, and repetitive tasks with no more than occasional and incidental contact with the public. He can perform occasional tasks that require teamwork. He requires a static work environment defined as a work environment that stays the same from day to day regarding the tasks to be performed as well as the physical surroundings. He must avoid workplace hazards such as working at unprotected heights and operating fast or dangerous machinery. He can perform jobs that require no greater than first grade math. He can perform jobs at General Educational Development (GED) reasoning level 1 and 2. The jobs should focus primarily on objects rather than people.

(AR 23). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 29). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including laundry worker I, industrial cleaner, and hand packager. (AR 29). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since May 6, 2019, the date the application was filed. (AR 30).

**VI.   ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1). Plaintiff raises one issue for this Court's review: whether the ALJ properly considered the medical opinion evidence. (Doc. No. 14 at 8-15).

**VII.   DISCUSSION**

**A. Medical Opinions**

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

6

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id.* at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Plaintiff argues the ALJ improperly considered the medical opinions of Ronald Sheldon, Ph.D. and Pauline Bonilla, Psy.D. (Doc. No. 14 at 8-15). In October 2019, treating provider Dr. Ronald Sheldon opined that Plaintiff is precluded from performance for 15% (defined as 72 minutes) or more of an 8-hour work day in his ability to remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods of time; perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform

1  at a consistent pace without an unreasonable number and length of rest periods; get along with
2  coworkers or peers without distracting them or exhibiting behavior extremes; respond
3  appropriately to changes in the work setting; travel in unfamiliar places or use public
4  transportation; and set realistic goals or make plans independently of others. (AR 536-37). Dr.
5  Sheldon further opined that Plaintiff is precluded from performance for 10% (defined as 48
6  minutes) of an 8-hour work day in his ability to understand and remember very short and simple
7  instructions; carry out very short and simple instructions; interact appropriately with the general
8  public; ask simple questions or request assistance; accept instructions and respond appropriately
9  to critics [sic] from supervisors; maintain socially appropriate behavior and to adhere to basic
10 standards of neatness and cleanliness; and be aware of normal hazards and take appropriate
11 precautions. (*Id.*).

12 Dr. Sheldon opined that Plaintiff is likely to be absent from work as a result of his
13 impairments 5 or more days per month and is likely to be unable to complete an 8-hour workday
14 as a result of his impairments 5 days or more per month. (AR 537-38). The ALJ found Dr.
15 Sheldon's mental health opinion was not persuasive for several reasons. (AR 28). First, in
16 considering the supportability factor under the new regulations, the ALJ generally found that

> [e]ven as to the day of this opinion, there was only a brief mental status examination. The claimant's level of insight was fair, judgment was fair, and he had made some progress. There was no significant change in the claimant's mood, affect, thought process, orientation, motor activity, speech, behavior, or functioning. The claimant took his medication as prescribed. The claimant had remained in stable condition. There were no medication changes recommended.

22 (AR 28 (citing AR 499-500).

23 Plaintiff points out the mental status examination completed by Dr. Sheldon when he
24 initiated treatment in December 2014 included results of accelerated motor activity; which found
25 evasive, anxious, and mistrustful attitude toward the examiner; depressed, anxious, and irritable
26 mood; constricted affect; pressured speech, loose thought process; slow thinking; obsessional,
27 depressive, and self-deprecatory thought content; average intelligence; partial insight; difficulty
28 acknowledging presence of psychiatric problems; and impaired ability to make reasonable

8

1  decision. (AR 1015-16).  Plaintiff argues "[t]his examination set the standard from which there
2  was 'no significant change' throughout the remainder of the record.  By wholly ignoring the
3  establishment of Plaintiff's baseline, the ALJ mischaracterized the record as demonstrating
4  benign findings when the actual evidence showed otherwise." (Doc. No. 14 at 14).  Defendant
5  counters the ALJ did not characterize the initial 2014 findings as "benign"; rather, "the ALJ
6  properly characterized the findings as simply not supportive of Dr. Sheldon's opinion." (Doc.
7  No. 17 at 15).

8  When considering the medical opinion evidence, the ALJ must do more than state a
9  conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather
10 than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Brown-
11 Hunter*, 806 F.3d at 495 (a court "cannot substitute [the court's] conclusions for the ALJ's, or
12 speculate as to the grounds for the ALJ's conclusions.  Although the ALJ's analysis need not be
13 extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully
14 determine whether the ALJ's conclusions were supported by substantial evidence.").  "This can
15 be done by setting out a detailed and thorough summary of the facts and conflicting clinical
16 evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725.  In
17 addition, as noted above, the Ninth Circuit recently clarified that under the new regulations for
18 considering medical evidence, "an ALJ cannot reject an examining or treating doctor's opinion as
19 unsupported or inconsistent without providing an explanation supported by substantial evidence.
20 The agency must 'articulate … how persuasive' it finds 'all of the medical opinions' from each
21 doctor or other source, and 'explain how [it] considered the supportability and consistency
22 factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted).

23 Here, the ALJ fails to consider the baseline mental status examination findings at any
24 point in the decision, nor does the ALJ explain how any of the specific limitations assessed by Dr.
25 Sheldon are unsupported by the lack of "significant change" in those findings.  Similarly, the ALJ
26 offers no explanation as to how Plaintiff's adherence to taking his medication as prescribed, the
27 lack of change in medications prescribed, findings of "fair" insight and judgment, and a notation
28 of "some progress" are unsupportive of Dr. Sheldon's opinion. (*See* AR 499-500 (also noting that

9

1  Plaintiff does not "display insight into behavior/illness/symptoms")).³  Finally, the Court notes
2  that the ALJ did not consider Dr. Sheldon's list of "items upon which [he based his opinion]"
3  including Plaintiff's history and medical file, progress and office notes, physical examinations,
4  and psychological reports; nor did she consider Dr. Sheldon's "additional comments and
5  remarks" portion of the opinion noting, consistent with the results of the 2014 mental status
6  examination, "impaired thoughts (circumstantial)," severe anxiety attacks, impulsive, and needs
7  supervision.  (AR 538).  Based on the foregoing, the ALJ's finding that Dr. Sheldon's opinion
8  was not persuasive because it was unsupported by the treatment note on the day of the opinion is
9  not supported by substantial evidence.

10  Second, arguably as to the consistency factor, the ALJ generally found Dr. Sheldon's
11  opinion is "not supported by the medical record" and, without citation to the record or either
12  opinion, the ALJ noted that Dr. Sheldon's opinion was inconsistent with the opinion of Dr.
13  Bonilla.  (AR 28).  However, aside from a single treatment visit with Dr. Sheldon, discussed in
14  detail *supra*, the ALJ fails to reference specific evidence from the "medical record" that is
15  inconsistent with the precise limitations opined by Dr. Sheldon, nor does the ALJ explain how the
16  "medical record" was inconsistent with or unsupportive of those limitations.  (*See* AR 28).  As
17  above, when considering the medical opinion evidence, the ALJ must do more than state a
18  conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather
19  than the doctors,' are correct."  *Reddick*, 157 F.3d at 725; *see also Woods*, 32 F.4th at 792 (in
20  rejecting an examining or treating doctor's opinion as unsupported or inconsistent under the new
21  regulations, an ALJ must still provide an explanation supported by substantial evidence).
22  Similarly, while both parties offer "evidence" of consistency, or lack thereof, between Dr. Bonilla
23  and Dr. Sheldon's opinions, the ALJ again fails to offer any explanation as to how any of the
24  specific limitations opined by each physician are inconsistent, particularly as to Plaintiff's ability
25  to accept instructions from supervisors and maintain regular attendance.  (*See* Doc. No. 14 at 15).
26  Thus, the ALJ's finding that Dr. Sheldon's opinion was not persuasive because of alleged

---

³ The ALJ does not cite, nor does the Court discern, any observation in Dr. Sheldon's October 2019 treatment note that Plaintiff "remained in stable condition."  (*See* AR 499-500).

10

inconsistencies with the "medical record" and with Dr. Bonilla's opinion is not supported by substantial evidence.

For all of these reasons, the ALJ's rejection of Dr. Sheldon's opinion under the new regulations is not supported by substantial evidence. On remand the ALJ must reconsider Dr. Sheldon's opinion. Moreover, in light of the need to reconsider Dr. Sheldon's opinion, and because the ALJ's analysis was at least partially dependent upon analysis of Dr. Bonilla's opinion, the undersigned declines to address Plaintiff's challenge to Dr. Bonilla's opinion in detail here. On remand, the ALJ is instructed to reconsider all of the relevant medical opinion evidence and conduct a new sequential analysis considering all of the evidence in the record, and a reassess the RFC and step five finding if necessary.

**B. Remedy**

The Court finds in this case that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered the medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Thus, the undersigned recommends the case be remanded for further proceedings.

On remand, the ALJ should reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. Finally, the ALJ should reconsider the remaining steps in the sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 14) be GRANTED.

2. Defendant's Cross Motion for Summary Judgment (Doc. No. 17) be DENIED.

3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSE the Commissioner's decision and REMAND this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

4. The district court direct the Clerk to enter judgment in favor of the Plaintiff, terminate any pending motions/deadlines, and close this case.

## NOTICE TO PARTIES

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. *Id*.; Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." The assigned District Judge will review these Findings and Recommendations under 28 U.S.C. § 636(b)(1)(C). A party's failure to file objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:    April 26, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE